Hope v. Flentge.

# HOPE v. FLENTGE, *Appellant.*

### In Banc, June 29, 1897.

1. **Elections:** COUNTING BALLOTS. After there had been two recounts of the ballots cast at a general election, and certificates thereof made by the county clerk, it was not error in the circuit court to refuse an application for another count of the ballots of two precincts, in the circumstances stated in the opinion. (Reaffirming *Sone v. Williams,* 130 Mo. 530.)

2. ———: RESIDENCE OF VOTER. The fact of residence for the purpose of voting depends largely on the intention of the person in question, and where he testifies to such intention and to the other facts necessary to entitle him to vote, and the trial court finds that he is a qualified voter, the Supreme Court will not disturb that finding.

3. ———: ILLEGAL BALLOTS: UNSCRATCHED GROUPS. An official ballot furnished by the county clerk of Cape Girardeau county for use at the general election of 1896, contained *eight* distinct columns or groups, each having a heavily leaded caption indicating the party to which the candidates under it belonged. One of these columns was headed "Republican Ticket," another "Independent Ticket." For each office to be filled at said election the Republican ticket or group contained the name of a candidate. The Independent group contained blank spaces for each officer except sheriff, which was filled by a name opposite the names for sheriff on all the other tickets. At said election forty-eight ballots were cast, on which *neither* the Republican *nor* Independent columns or groups were in any manner scratched or marked by the voter, and these ballots were rejected as illegal by the judges of election and by the circuit court. *Held,* that said ballots were properly rejected for *all* the offices voted for on each of said groups, at said election, and not merely as to sheriff. *The statute being mandatory requires the voter to scratch all the groups or columns except one, and to make all his changes if any on that one.* (BARCLAY, C. J., and MACFARLANE and ROBINSON, JJ., dissenting.)

4. **Mandatory Statute:** SECTION 4781, REVISED STATUTES 1889. The mode of marking the official ballot, prescribed by section 4781, as amended by laws of 1892, is mandatory; and a failure to erase the group under the caption "Independent Ticket" containing a nomination for sheriff only, will render the ballot unlawful for all the other offices named in another unscratched column. (BARCLAY, C. J., and MACFARLANE and ROBINSON, JJ., dissenting.)

Hope v. Flentge.

5. ———: "GROUP" DEFINED. Each group under a distinct party caption, save the one voted, must be scratched in some manner, and a ballot with two unscratched columns is illegal. A "group" as mentioned in the ballot law (sec. 4781), consists as well of one name, under a distinct caption, as it would if there had been a name for each office on the ballot.

6. ———: DISABLED VOTERS: OMISSION OF OATH. The omission of election judges to require an oath of voters, as to their inability to mark their own ballots by reason of physical disability, should not disfranchise said voters, whose ballots were marked by the judges without requiring such oath, when no fraud or collusion is charged.

7. ———: JUDGES ENTERING BOOTHS. The fact that the judges of election entered the booths and assisted some voters to prepare their ballots, although a violation of law, in the absence of fraud should not cause the said voters to lose their ballots, the voter himself being in no way responsible for the conduct of the judges.

8. ———: NOTICE OF CONTEST: PLEADING. Notices of contest are susceptible of amendment in the circuit court.

*Appeal from Cape Girardeau Circuit Court.*—HON. HENRY C. RILEY, Judge.

AFFIRMED.

*B. F. Davis, E. D. Hays,* and *Wilson Cramer* for appellant.

(1) Contestee's motion for an order on the county clerk to open and recount all of the ballots cast for him at Appleton and Friedheim precincts should have been sustained. (2) In his notice contestor objects to the vote of Hy. Belderman (Bueltemann) who is alleged to have voted for contestee. All of the evidence offered by contestor at the trial, which was objected to, relates to the nonresidence of Robert Bueltemann, a brother of Henry, whose vote is not challenged. The court erred in admitting this testimony and in deducting the vote of Robert Bueltemann from contestee's total. (3) A. N. Payne and E. W. Nelson, both of whom came from other counties to attend the Southeast Missouri

Normal School at Cape Girardeau and were students at the time, were not qualified voters. Const. Mo., art. 8, sec. 7; *In re Goodman*, 146 N. Y. 284; *In re Garvey*, 147 N. Y. 117. (4) The court erred in refusing to allow contestee to introduce evidence in support of the assignment that at Burfordsville and Crump precincts the judges of election assisted in making out ballots without requiring an oath, as provided by law, that the voter could not read nor write, or by reason of physical disability was unable to mark his ballot. This requirement of the statute is mandatory. The voter who accepts assistance when not entitled is *particeps criminis* and should lose his vote. Acts 1893, sec. 1; *Majors v. Barker*, 35 S. W. Rep. (Ky.) 543; *Ellis v. May*, 58 N. W. Rep. (Mich.) 483. (5) The court erred in refusing to receive evidence offered by contestee to show that at Neeley's Landing and Crump precincts the democratic judges of election entered the booths and assisted voters named in the preparation of the ballots. 1 R. S. 1889, p. 1085, sec. 4784; Acts 1891, p. 135, sec. 10; Acts 1893, p. 164, sec. 1. (6) This statutory provision is mandatory. *Hall v. Schoenecke*, 128 Mo. 661; *Major v. Barker*, 35 S. W. Rep. (Ky.) 543; *People v. Board of State Canvassers*, 29 N. E. Rep. 327 (329). (7) Forty-eight ballots were objected to by contestor, and were excluded and not counted by the court, for the sole and only reason that the name of the candidate for sheriff on the Independent ticket— the only name appearing on that ticket, was not erased, or, as expressed in the language of the objection itself "because it appears upon inspection of the ballot that two of the groups printed on it are not scratched, being the Republican and Independent not scratched." Under the law these ballots were legal and valid ballots for all persons named on the ticket, excepting the candidate for sheriff, and should have been counted for this con-

testee as a candidate for the office of collector. *Gumm v. Hubbard*, 97 Mo. 311; *Lankford v. Gebhart*, 130 Mo. 621; *Kreitz v. Behrensmeyer*, 17 N. E. Rep. 232; *Blankship v. Israel*, 24 N. E. Rep. 615; *State v. Foxworthy*, 45 N. W. Rep. 632; *Wimmer v. Eaton*, 34 N. W. Rep. 170; *Brown v. McCullom*, 41 N. W. Rep. 197. (8) The section of the statute in reference to the marking of ballots is purely directory; it nowhere provides that a ballot not prepared as directed shall not be counted. Acts 1893, p. 155, sec. 3; *Hall v. Schoenecke*, 128 Mo. 661; *Lankford v. Gebhart*, 130 Mo. 621.

·  *J. W. Limbaugh* and *W. H. Miller* for respondent.

(1) Ballots marked rejected are presumed to have been properly rejected, and the burden of proof is on the party claiming that they were illegally rejected. *Zeiler v. Chapman*, 54 Mo. 502. (2) The court committed no error in refusing to disfranchise the various voters so challenged by contestee, because of a failure on the part of the election judges to perform a statutory duty, there having been no charges of fraud made in the notice served, nor for that matter at the trial. *Bowers v. Smith*, 111 Mo. 45. (3) Statutes regulating elections should be given such constructions as will secure more firmly the rights of electors conferred by the Constitution and express more accurately the will of the people, and not to allow statutory regulations to be so applied as to endanger the right of suffrage by putting the result within the control of ignorant, careless, or dishonest officials, and beyond the reach of the courts or the people. *Whipley v. McCune*, 12 Cal. 352; *Fowler v. State*, 3 S. W. Rep. 225; Cooley's Const. Lim., secs. 612 and 771; *Hall v. Schoenecke*, 128 Mo. 668; *Hanscomb v. Lockhart*, 31 S. W. Rep. 547; R. S. 1889, sec. 4784, as amended in Acts of 1891, p. 134; *Nash v. Craig*, 134 Mo. 347. (4) All those ballots

upon which the "Independent Ticket" was not erased were properly rejected, because the voting was not done in the manner prescribed by statute, not being in one group. R. S. 1889, sec. 4773, as amended in Acts of 1891, p. 135. (5) The court committed no error in holding that Nelson and Payne, the two students at the Southeast Missouri Normal School, were competent and qualified voters, the question of their residence being one of fact. *Hall v. Schoenecke, supra; Lankford v. Gebhart,* 130 Mo. 622. (6) The clerk of the county court having, in pursuance of writs regularly issued, the validity of which is not contested, made a recount as therein shown, his certificate is *prima facie* evidence of the truth of the matter as stated, and is so made by the statute. R. S. 1889, sec. 4726.

GANTT, J.—This is a case of contested election under the laws of this State for the office of collector of the revenue of Cape Girardeau county, to which appellant, Flentge, received the certificate of election at the general election held November 3, 1896, the official count by the county clerk showing that appellant and contestee received 2,449 votes and the contestor and respondent 2,440 votes. The official ballot for said election in said county contained eight distinct tickets, grouped under the following different headings or captions: "Democratic Ticket," "Republican Ticket," "People's Ticket," "Prohibition Ticket (nominated by electors)," "Socialist-Labor Ticket (nominated by electors)," "Palmer-Buckner National Democratic Ticket (nominated by electors)," "National Ticket (nominated by electors)," and "Independent Ticket (nominated by electors)."

Edward W. Flentge was the Republican candidate for collector and E. L. Hope was the nominee of both the Democratic party and the People's party.

In the time allowed by statute the respondent Hope gave notice of contest, assigning two grounds: *First*, that twelve persons whose names were given and charged to have voted for Flentge, the contestee, were not legal voters. *Second*, that by mistake of the election officers, forty votes cast for contestor, Hope, at Steimel precinct were not counted for him.

And thereupon in due time the contestee Flentge served the contestor with notice of a counter contest. The grounds of which are:

*First.* That twenty-three persons named who voted for respondent were not legal voters.

*Second.* That at fourteen specified precincts a certain number of legal and valid ballots cast for appellant were unlawfully rejected and not counted for him.

*Third.* That the judges of election unlawfully failed to count forty-one votes cast for him at Steimel's precinct.

*Fourth.* That the ballots of Robt. Foster and others (twenty-six in number) cast and counted for respondent at Neeley's Landing precinct, were illegal and void, because the Democratic judge of election entered the booths and assisted the preparation of said ballots.

*Fifth.* That the ballots of W. F. Points and others (sixty in number) cast and counted for respondent at Burfordville precinct were illegal and void, because prepared by the judges of election without oath being first made by the electors as to their inability to read or write, etc.

*Sixth.* That the ballots of Ed. Turner and Wm. Welch, cast and counted for respondent at the court house precinct, were illegal and void, because prepared by the judges without an oath of disability on the part of the electors.

*Seventh.* That the ballots of Hy. Penturf and others (seventy in number), cast and counted for respondent at Crump precinct, were illegal and void, because prepared by the judges of election without an oath of disability by the electors, and because the democratic judge of election entered the booths and assisted in the preparation of the ballots.

At various precincts in the county the election officers refused to count and rejected those ballots which contained two groups unscratched, thus those in which the Democratic or Republican group and the Independent group were neither scratched. This action forms the basis of the second ground of contest in the counter contest of the appellant Flentge.

Copies of the official ballot and of the rejected ballots accompany this statement.

On the application of the contestor, Hope, there was a recount by the county clerk of the ballots cast at Steimel precinct, and on the application of contestee a recount of all the precincts. The county clerk made separate certificates under the two orders.

At the January term, 1897, a trial was had and a judgment rendered in favor of the contestor Hope, the court finding that he had received a majority of twelve votes. A motion for new trial was made and overruled and an appeal taken to this court.

Upon the record in the cause appellant Flentge submits for review the following points:

*First.* The act of the court in overruling the motion for a recount of the votes at Friedheim and Appleton precincts.

*Second.* The ruling on the vote of Robt. Bueltemann.

*Third.* The ruling on the votes of A. N. Payne and E. W. Nelson.

# EXHIBIT A.

| DEMOCRATIC TICKET. | REPUBLICAN TICKET. | PEOPLE'S TICKET. | PROHIBITION TICKET. [Nominated by Electors.] | SOCIALIST LABOR TICKET. [Nominated by Electors.] | Palmer-Buckner NATIONAL DEMOCRATIC TICKET. [Nominated by Electors.] | NATIONAL TICKET. [Nominated by Electors.] | INDEPENDENT TICKET. Nominated by Electors. |
|---|---|---|---|---|---|---|---|
| **For Presidential Electors:** | **For Presidential Electors:** | **For Presidential Electors:** | **For Presidential Electors:** | **For Presidential Electors:** | **For Presidential Electors:** | **For Presidential Electors:** | |
| At Large DeWITT C. ALLEN | At Large JOHN B. HALE | At Large THOMAS B. ANDERSON | At Large JAMES H. SOUTHWORTH | At Large LOUIS FROEHLICH | At Large WILLIAM A. POPE YEAMAN | At Large JOHN T. FIELD | |
| At Large THOMAS B. ANDERSON | At Large JOSEPH B. UPTON | At Large DeWITT C. ALLEN | At Large JAMES H. GARRISON | At Large HENRY KNOEBEL | At Large BENJAMIN U. MASSEY | At Large JULIUS C. HUGHES | |
| 1st Dist. CHRISTOPHER C. FOGLE | 1st Dist. CORNELIUS A. TREAT | 1st Dist. CHRISTOPHER C. FOGLE | 1st Dist. ROBERT C. MARSHALL | 1st Dist. | 1st Dist. CHARLES J. LEWIS | 1st Dist. A. G. BROWN | 1st Dist. A. G. BROWN |
| 2d Dist. GIDEON F. ROTHWELL | 2d Dist. JOHN F. SMITH | 2d Dist. GIDEON F. ROTHWELL | 2d Dist. MARTIN V. TANNER | 2d Dist. | 2d Dist. WILLIAM S. STOCKWELL | 2d Dist. FRANK O. CUSTER | |
| 3d Dist. WILLIAM D. HAMILTON | 3d Dist. ALVORD J. ALTHOUSE | 3d Dist. WILLIAM D. HAMILTON | 3d Dist. THOMAS J. WORSTER | 3d Dist. | 3d Dist. ROBT. A. HEWITT | 3d Dist. BURFORD A. COLLYER | |
| 4th Dist. JAMES J. SHOECROFT | 4th Dist. THOMAS M. BAILEY | 4th Dist. JAMES J. SHOECROFT | 4th Dist. JAMES J. BENTLEY | 4th Dist. | 4th Dist. GEORGE W. BALLENGEE | 4th Dist. S. S. MANLEY | |
| 5th District WILEY O. COX | 5th Dist. JOSEPH H. HAWTHORNE | 5th Dist. WILEY O. COX | 5th Dist. THOMAS S. WOODWARD | 5th Dist. | 5th Dist. THOMAS B. BUCKNER | 5th Dist. O. D. HANGER | |
| 6th Dist. CLEMENT C. DICKINSON | 6th Dist. FRANCIS H. BABBS | 6th Dist. CLEMENT C. DICKINSON | 6th Dist. JOHN M. VAUGHAN | 6th Dist. | 6th Dist. J. WESLEY STONE | 6th Dist. M. INGRAHAM | |
| 7th Dist. CHARLES J. WILKINS | 7th Dist. ODON GUITAR | 7th Dist. CHARLES J. WILKINS | 7th Dist. JAMES H. BANKS | 7th Dist. | 7th Dist. RICHARD W. NICOLDS | 7th Dist. W. J. KIDD | |
| 8th Dist. ARCUS L. DOUGLAS | 8th Dist. CHARLES C. BELL | 8th Dist. ARCUS L. DOUGLAS | 8th Dist. SIMON B. PHIFER | 8th Dist. | 8th Dist. ROBERT F. WALKER | 8th Dist. O. B. ROBBINS | |
| 9th Dist. THOMAS S. CUNNINGHAM | 9th Dist. CHARLES M. ELLIS | 9th Dist. THOMAS S. CUNNINGHAM | 9th Dist. CORTES STUART | 9th Dist. | 9th Dist. SAMUEL W. BUCKNER | 9th Dist. J. H. McGHEE | |
| 10th Dist. WILLIAM G. FRYE | 10th Dist. GEORGE AUTENREITH | 10th Dist. WILLIAM G. FRYE | 10th Dist. OLIVER E. PAYNE | 10th Dist. G. A. HOEHN | 10th Dist. JOHN C. WILKINSON | 10th Dist. | |
| 11th Dist. FELIX E. GUNN | 11th Dist. JOHN J. KOBUSCH | 11th Dist. FELIX E. GUNN | 11th Dist. GEORGE D. McCULLOCH | 11th Dist. | 11th Dist. DONALD McN. PALMER | 11th Dist. W. W. HOPKINS | |
| 12th Dist. DANIEL J. HATTON | 12th Dist. GEORGE W. BAUMHOFF | 12th Dist. DANIEL J. HATTON | 12th Dist. LEONARD R. WOODS | 12th Dist. | 12th Dist. GEORGE R. LOCKWOOD | 12th Dist. E. H. KELLER | |
| 13th Dist. ROBERT LAMAR | 13th Dist. | 13th Dist. ROBERT LAMAR | 13th Dist. ANDREW A. WARD | 13th Dist. | 13th Dist. JAMES R. SIMMONS | 13th Dist. P. E. GENOWAY | |
| 14th Dist. SIMEON A. HANDY | 14th Dist. GEORGE M. MILEY | 14th Dist. SIMEON A. HANDY | 14th Dist. THOMAS B. TURNBAUGH | 14th Dist. | 14th Dist. OLIVER H. P. CATRON | 14th Dist. S. C. MINNERBREAKER | |
| 15th Dist. JOHN B. COLE | 15th Dist. THOMAS M. ALLEN | 15th Dist. JOHN B. COLE | 15th Dist. JACOB D. CONRAD | 15th Dist. | 15th Dist. MACHIR F. JANUARY | 15th Dist. F. M. MOODY | |
| **For Governor:** LON V. STEPHENS. | **For Governor:** ROBERT E. LEWIS. | **For Governor:** | **For Governor:** HERMAN P. FARIS | **For Governor:** LEWIS C. FRY | **For Governor:** J. McDOWELL TRIMBLE. | **For Governor:** H. P. FARIS. | |
| **For Lieutenant-Governor:** AUGUST H. BOLTE. | **For Lieutenant-Governor:** ABRAM C. PETTIJOHN. | **For Lieutenant-Governor:** JAMES H. HILLIS. | **For Lieutenant-Governor:** JAS. M. RITCHEY. | **For Lieutenant-Governor:** CHRISTOPHER ROCKER. | **For Lieutenant-Governor:** ALBERT E. OSTERMAN. | **For Lieutenant-Governor:** J. M. RITCHEY. | |
| **For Secretary of State:** ALEXANDER A. LESUEUR. | **For Secretary of State:** WILLIAM P. FREEMAN. | **For Secretary of State:** THOMAS DAY. | **For Secretary of State:** EDWIN E. McCLELLAN. | **For Secretary of State:** ALBERT E. SANDERSON. | **For Secretary of State:** D. H. McINTYRE. | **For Secretary of State:** E. E. McCLELLAN. | |
| **For State Auditor:** JAMES M. SEIBERT. | **For State Auditor:** JOHN G. BISHOP. | **For State Auditor:** SHERIDAN WEBSTER. | **For State Auditor:** JOHN O. ROLFE. | **For State Auditor:** JAMES RANDAL. | **For State Auditor:** EDW. D. PORTER. | **For State Auditor:** JOHN O. ROLFE. | |
| **For State Treasurer:** FRANK L. PITTS. | **For State Treasurer:** JACOB F. GMELICH. | **For State Treasurer:** OSCAR WOOD. | **For State Treasurer:** IRVIN T. HULL. | **For State Treasurer:** HENRY POELING. | **For State Treasurer:** WILLIAM McHWRATH. | **For State Treasurer:** I. T. HULL. | |
| **For Attorney-General:** EDWARD C. CROW. | **For Attorney-General:** JOHN KENNISH. | **For Attorney-General:** FRANK E. RICHEY. | **For Attorney-General:** GEORGE E. BOWLING. | **For Attorney-General:** | **For Attorney-General:** NICHOLAS D. THURMOND. | **For Attorney-General:** | |
| **For Railroad and Warehouse Commissioner:** TIMOTHY J. HENNESSEY. | **For Railroad and Warehouse Commissioner:** GEORGE N. STILLE. | **For Railroad and Warehouse Commissioner:** DAVID M. COWAN. | **For Railroad and Warehouse Commissioner:** WILLIAM E. SULLIVAN. | **For Railroad and Warehouse Commissioner:** CHARLES L. HOOD. | **For Railroad and Warehouse Commissioner:** HENRY A. KOSTER. | **For Railroad and Warehouse Commissioner:** W. E. SULLIVAN. | |
| **For Judge of Supreme Court:** THEODORE BRACE. | **For Judge of Supreme Court:** RUDOLPH HIRZEL. | **For Judge of Supreme Court:** JOHN M. VORIS. | **For Judge of Supreme Court:** LEWIS ADAMS. | **For Judge Supreme Court:** | **For Judge of Supreme Court:** THEO. BRACE. | **For Judge of Supreme Court:** LEWIS ADAMS. | |
| **For Judge St. Louis Court of Appeals:** CHARLES C. BLAND. | **For Judge St. Louis Court of Appeals:** RODERICK E. ROMBAUER. | **For Judge St. Louis Court of Appeals:** CHARLES C. BLAND. | **For Judge St. Louis Court of Appeals:** JOHN W. NORTH. | **For Judge St. Louis Court of Appeals:** | **For Judge St. Louis Court of Appeals:** | **For Judge St. Louis Court of Appeals:** | |
| First Constitutional Amendment—Providing for the removal of the seat of government of Missouri from the City of Jefferson to the city of Sedalia—YES / First Constitutional Amendment—Providing for the removal of the seat of government of Missouri from the City of Jefferson to the city of Sedalia—NO | (same) —YES / —NO | (same) —YES / —NO | (same) —YES / —NO | (same) —YES / —NO | (same) —YES / —NO | (same) —YES / —NO | |
| Second Constitutional Amendment—To define and enlarge the jurisdiction of the courts of appeals—YES / Second Constitutional Amendment—To define and enlarge the jurisdiction of the courts of appeals—NO | (same) —YES / —NO | (same) —YES / —NO | (same) —YES / —NO | (same) —YES / —NO | (same) —YES / —NO | (same) —YES / —NO | |
| Third Constitutional Amendment—To reduce school age from 6 to 5 years—YES / Third Constitutional Amendment—To reduce school age from 6 to 5 years—NO | (same) —YES / —NO | (same) —YES / —NO | (same) —YES / —NO | (same) —YES / —NO | (same) —YES / —NO | (same) —YES / —NO | |
| Fourth Constitutional Amendment—Relating to the purchase or erecting of water-works, electric or other light plants and public sewers in cities of 30,000 inhabitants or less—YES / Fourth Constitutional Amendment—Relating to the purchase or erecting of water-works, electric or other light plants and public sewers in cities of 30,000 inhabitants or less—NO | (same) —YES / —NO | (same) —YES / —NO | (same) —YES / —NO | (same) —YES / —NO | (same) —YES / —NO | (same) —YES / —NO | |
| **For Representative in Congress:** WILLARD D. VANDIVER. | **For Representative in Congress:** JOHN A. SNIDER. | **For Representative in Congress:** AMBROSE H. LIVINGSTON. | **For Representative in Congress:** | **For Representative in Congress:** | **For Representative in Congress:** | **For Representative in Congress:** | |
| **For State Senator:** ROBERT DRUM. | **For State Senator:** THOMAS R. GREEN. | **For State Senator:** | **For State Senator:** | **For State Senator:** | **For State Senator:** | **For State Senator:** | |
| **For Representative:** E. S. MILLER. | **For Representative:** JOHN J. SAWYER. | **For Representative:** E. SYLVESTER MILLER. | **For Representative:** A. K. STEVENSON. | **For Representative:** | **For Representative:** | **For Representative:** | |
| **For Judge County Court, Second District:** ROBERT W. McNEELY. | **For Judge County Court, Second District:** FREDERICK B. MEYER. | **For Judge County Court, Second District:** ROBERT W. McNEELY. | **For Judge County Court, Second District:** WM. S. HITT. | **For Judge County Court, Second District:** | **For Judge County Court, Second District:** | **For Judge County Court, Second District:** | |
| **For Prosecuting Attorney:** T. D. HINES. | **For Prosecuting Attorney:** EDWARD D. HAYS. | **For Prosecuting Attorney:** T. D. HINES. | **For Prosecuting Attorney:** | **For Prosecuting Attorney:** | **For Prosecuting Attorney:** | **For Prosecuting Attorney:** | |
| **For Collector of the Revenue:** E. L. HOPE. | **For Collector of the Revenue:** EDWARD W. FLENTGE. | **For Collector of the Revenue:** E. L. HOPE. | **For Collector of the Revenue:** RICHARD B. BURNS. | **For Collector of the Revenue:** | **For Collector of the Revenue:** | **For Collector of the Revenue:** | |
| **For Sheriff:** JOHN H. JENKINS. | **For Sheriff:** BERNHARD GOCKEL. | **For Sheriff:** JOHN H. JENKINS. | **For Sheriff:** CHARLES N. CALDWELL. | **For Sheriff:** | **For Sheriff:** | **For Sheriff:** | **For Sheriff:** FRED A. KAGE. |
| **For County Assessor:** J. B. HOWARD. | **For County Assessor:** J. F. CALDWELL. | **For County Assessor:** J. B. HOWARD. | **For County Assessor:** O. SCOTT REID. | **For County Assessor:** | **For County Assessor:** | **For County Assessor:** | |
| **For County Surveyor:** N. C. FRISSELL. | **For County Surveyor:** JOHN E. COTNER. | **For County Surveyor:** N. C. FRISSELL. | **For County Surveyor:** WILL W. TAYLOR. | **For County Surveyor:** | **For County Surveyor:** | **For County Surveyor:** | |
| **For County Treasurer:** D. A. DRUM. | **For County Treasurer:** AUGUST UDE. | **For County Treasurer:** D. A. DRUM. | **For County Treasurer:** JAMES E. WALLACE. | **For County Treasurer:** | **For County Treasurer:** | **For County Treasurer:** | |
| **For Public Administrator:** ALBERT H. POE. | **For Public Administrator:** JULIUS UMBECK. | **For Public Administrator:** ALBERT H. POE. | **For Public Administrator:** ERNEST WAGNER. | **For Public Administrator:** | **For Public Administrator:** | **For Public Administrator:** | |
| **For Coroner:** S. W. MORGAN. | **For Coroner:** FERDINAND BRASE. | **For Coroner:** S. W. MORGAN. | **For Coroner:** D. WESLEY ANDERSON. | **For Coroner:** | **For Coroner:** | **For Coroner:** | |
| **For Judge Court Common Pleas:** F. E. BURROUGH. | **For Judge Court Common Pleas:** ALEXANDER ROSS. | **For Judge Court Common Pleas:** F. E. BURROUGH. | **For Judge Court Common Pleas:** LEO HOWARD. | **For Judge Court Common Pleas:** | **For Judge Court Common Pleas:** | **For Judge Court Common Pleas:** | |
| **For Constable, Hubble Township.** | **For Constable, Hubble Township:** PETER HANSCHEN. | **For Constable, Hubble Township.** | **For Constable, Hubble Township:** | **For** | **For** | **For** | |

# EXHIBIT B.

| DEMOCRATIC TICKET. | REPUBLICAN TICKET. | PEOPLE'S TICKET. | PROHIBITION TICKET. [Nominated by Electors;] | SOCIALIST LABOR TICKET. [Nominated by Electors;] | Palmer-Buckner NATIONAL DEMOCRATIC TICKET | NATIONAL TICKET. [Nominated by Electors;] | INDEPENDENT TICKET. [Nominated by Electors.] |
|---|---|---|---|---|---|---|---|
| For Presidential Electors: | For Presidential Electors: | For Presidential Electors: | For Presidential Electors; | For Presidential Electors; | For Presidential Electors; | For Presidential Electors: | |
| At Large DeWITT C. ALLEN. | At Large JOHN B. HALE. | At Large THOMAS B. ANDERSON. | At Large JAMES H. SOUTHWORTH. | At Large LOUIS FROEHLICH. | At Large W. POPE YEAMAN. | At Large JOHN T. FIELD. | |
| At Large—THOMAS B. ANDERSON. | At Large—JOSEPH B. UPTON. | At Large—DeWITT C. ALLEN. | At Large JAMES H. GARRISON. | At Large HENRY KNOEBEL. | At Large—BENJAMIN U. MASSEY. | At Large—JULIUS C. HUGHES. | |
| 1st Dist, CHRISTOPHER C. OGLE. | 1st Dist, CORNELIUS A. TREAT. | 1st Dist, CHRISTOPHER C. OGLE. | 1st Dist, ROBERT C. MARSHALL. | 1st Dist, | 1st Dist, CHARLES J. LEWIS. | 1st Dist, A. G. BROWN. | |
| 2d Dist, GIDEON F. ROTHWELL. | 2d Dist, JOHN F. SMITH. | 2d Dist, GIDEON F. ROTHWELL. | 2d Dist, MARTIN V. TANNER. | 2d Dist, | 2d Dist, WILLIAM S. STOCKWELL. | 2d Dist, FRANK O. CUSTER. | |
| 3d Dist, WILLIAM D. HAMILTON. | 3d Dist, ALVORD J. ALTHOUSE. | 3d Dist, WILLIAM D. HAMILTON. | 3d Dist, THOMAS J. WORSTER. | 3d Dist, | 3d Dist, ROBT. A. HEWITT. | 3d Dist, BURFORD A. COLLYER. | |
| 4th Dist, JAMES J. SHOECROFT. | 4th Dist, THOMAS M. BAILEY. | 4th Dist, JAMES J. SHOECROFT. | 4th Dist, JAMES J. BENTLEY. | 4th Dist, | 4th Dist, GEORGE W. BALLENGEE. | 4th Dist, S. S. MANLEY. | |
| 5th District WILEY O. COX. | 5th Dist, JOSEPH H. HAWTHORNE. | 5th Dist, WILEY O. COX. | 5th Dist, THOMAS S. WOODWARD. | 5th Dist, | 5th Dist, THOMAS B. BUCKNER. | 5th Dist, O. D. HANGER. | |
| 6th Dist, CLEMENT C. DICKINSON. | 6th Dist, FRANCIS H. BABBS. | 6th Dist, CLEMENT C. DICKINSON. | 6th Dist, JOHN M. VAUGHAN. | 6th Dist, | 6th Dist, J. WESLEY STONE. | 6th Dist, M. INGRAHAM. | |
| 7th Dist, CHARLES J. WILKINS. | 7th Dist, ODON GUITAR. | 7th Dist, CHARLES J. WILKINS. | 7th Dist, JAMES H. BANKS. | 7th Dist, | 7th Dist, RICHARD W. NICOLDS. | 7th Dist, W. J. KIDD. | |
| 8th Dist, ARCUS L. DOUGLAS. | 8th Dist, CHARLES C. BELL. | 8th Dist, ARCUS L. DOUGLAS. | 8th Dist, SIMON B. PHIFER. | 8th Dist, | 8th Dist, ROBERT F. WALKER. | 8th Dist, O. B. ROBBINS. | |
| 9th Dist, THOMAS S. CUNNINGHAM. | 9th Dist, CHARLES M. ELLIS. | 9th Dist, THOMAS S. CUNNINGHAM. | 9th Dist, CORTES STUART. | 9th Dist, | 9th Dist, SAMUEL W. BUCKNER. | 9th Dist, J. H. McGHEE. | |
| 10th Dist, WILLIAM G. FRYE. | 10th Dist, GEORGE AUTENREITH. | 10th Dist, WILLIAM G. FRYE. | 10th Dist, OLIVER E. PAYNE. | 10th Dist, C. A. HOEHN. | 10th Dist, JOHN C. WILKINSON. | 10th Dist, | |
| 11th Dist, FELIX E. GUNN. | 11th Dist, GEORGE J. KOBUSCH. | 11th Dist, FELIX E. GUNN. | 11th Dist, GEORGE D. McCULLOCH. | 11th Dist, | 11th Dist, DONALD McN. PALMER. | 11th Dist, W. W. HOPKINS. | |
| 12th Dist, DANIEL L. HATTON. | 12th Dist, GEORGE W. BAUMHOFF. | 12th Dist, DANIEL L. HATTON. | 12th Dist, LEONARD R. WOODS. | 12th Dist, | 12th Dist, GEORGE R. LOCKWOOD. | 12th Dist, E. H. KELLER. | |
| 13th Dist, ROBERT LAMAR. | 13th Dist, E. B. SANKEY. | 13th Dist, ROBERT LAMAR. | 13th Dist, ANDREW A. WARD. | 13th Dist, | 13th Dist, JAMES R. SIMMONS. | 13th Dist, P. E. GENOWAY. | |
| 14th Dist, SIMEON A. HANDY. | 14th Dist, GEORGE M. MILEY. | 14th Dist, SIMEON A. HANDY. | 14th Dist, THOMAS B. TURNBAUGH. | 14th Dist, | 14th Dist, OLIVER H. P. CATRON. | 14th Dist, C. MINNEBRAKER. | |
| 15th Dist, JOHN B. COLE. | 15th Dist, THOMAS M. ALLEN. | 15th Dist, JOHN B. COLE. | 15th Dist, JACOB D. CONRAD. | 15th Dist, | 15th Dist, MACHIR T. JANUARY. | 15th Dist, T. M. MOODY. | |
| For Governor: LON V. STEPHENS. | For Governor: ROBERT E. LEWIS. | For Governor: | For Governor: HERMAN P. FARIS. | For Governor: LEWIS C. FRY. | For Governor: J. McDOWELL TRIMBLE. | For Governor: H. P. FARIS. | |
| For Lieutenant-Governor: AUGUST H. BOLTE. | For Lieutenant-Governor: ABRAM PETTIJOHN. | For Lieutenant-Governor: JAMES H. HILLIS. | For Lieutenant-Governor: JAS. M. RITCHEY. | For Lieutenant-Governor: CHRISTOPHER ROCKER. | For Lieutenant-Governor: ALBERT L. OSTERMAN. | For Lieutenant-Governor: J. M. RITCHEY. | |
| For Secretary of State: ALEXANDER A. LESUEUR. | For Secretary of State: WILLIAM P. FREEMAN. | For Secretary of State: THOMAS DAY. | For Secretary of State: EDWIN R. McCLELLAN. | For Secretary of State: ALBERT E. SANDERSON. | For Secretary of State: D. H. McINTYRE. | For Secretary of State: E. E. McCLELLAN. | |
| For State Auditor: JAMES M. SEIBERT. | For State Auditor: JOHN G. BISHOP. | For State Auditor: SHERIDAN WEBSTER. | For State Auditor: JOHN O. ROLFE. | For State Auditor: JAMES RANDAL. | For State Auditor: EDW. D. PORTER. | For State Auditor: JOHN O. ROLFE. | |
| For State Treasurer: FRANK L. PITTS. | For State Treasurer: JACOB F. GMELICH. | For State Treasurer: OSCAR WOOD. | For State Treasurer: IRVIN T. HULL. | For State Treasurer: HENRY ROELING. | For State Treasurer: WILLIAM McILWRATH. | For State Treasurer: I. T. HULL. | |
| For Attorney-General: EDWARD C. CROW. | For Attorney General: JOHN KENNISH. | For Attorney-General: FRANK L. RICHEY. | For Attorney-General: GEORGE E. BOWLING. | For Attorney-General: | For Attorney General: NICHOLAS D. THURMOND. | For Attorney-General: | |
| For Railroad and Warehouse Commissioner: TIMOTHY J. HENNESSEY. | For Railroad and Warehouse Commissioner: GEORGE N. STILLI. | For Railroad and Warehouse Commissioner: DAVID M. COWAN. | For Railroad and Warehouse Commissioner: WILLIAM E. SULLIVAN. | For Railroad and Warehouse Commissioner: CHARLES L. HOOD. | For Railroad and Warehouse Commissioner: HENRY A. KOSTER. | For Railroad and Warehouse Commissioner: W. E. SULLIVAN. | |
| For Judge of Supreme Court: THEODORE BRACE. | For Judge of Supreme Court: RUDOLPH HIRZEL. | For Judge of Supreme Court: JOHN M. VORIS. | For Judge of Supreme Court: LEWIS ADAMS. | For Judge Supreme Court: | For Judge of Supreme Court: THEO. BRACE. | For Judge of Supreme Court: LEWIS ADAMS. | |
| For Judge St. Louis Court of Appeals: CHARLES C. BLAND. | For Judge St. Louis Court of Appeals: RODERICK E. ROMBAUER. | For Judge St. Louis Court of Appeals: CHARLES C. BLAND. | For Judge St. Louis Court of Appeals: JOHN W. NORTH. | For Judge St. Louis Court of Appeals: | For Judge St. Louis Court of Appeals: | For Judge St. Louis Court of Appeals: | |
| First Constitutional Amendment—Providing for the removal of the seat of government of Missouri from the City of Jefferson to the city of Sedalia—YES. First Constitutional Amendment—Providing for the removal of the seat of government of Missouri from the City of Jefferson to the city of Sedalia—NO. | First Constitutional Amendment—Providing for the removal of the seat of government of Missouri from the City of Jefferson to the city of Sedalia—YES. First Constitutional Amendment—Providing for the removal of the seat of government of Missouri from the City of Jefferson to the city of Sedalia—NO. | First Constitutional Amendment—Providing for the removal of the seat of government of Missouri from the City of Jefferson to the city of Sedalia YES First Constitutional Amendment—Providing for the removal of the seat of government of Missouri from the City of Jefferson to the city of Sedalia—NO. | First Constitutional Amendment—Providing for the removal of the seat of government of Missouri from the City of Jefferson to the city of Sedalia—YES. First Constitutional Amendment—Providing for the removal of the seat of government of Missouri from the City of Jefferson to the city of Sedalia—NO. | First Constitutional Amendment—Providing for the removal of the seat of government of Missouri from the City of Jefferson to the city of Sedalia—YES. First Constitutional Amendment—Providing for the removal of the seat of government of Missouri from the City of Jefferson to the city of Sedalia—NO. | First Constitutional Amendment—Providing for the removal of the seat of government of Missouri from the City of Jefferson to the city of Sedalia—YES. First Constitutional Amendment—Providing for the removal of the seat of government of Missouri from the City of Jefferson to the city of Sedalia—NO. | First Constitutional Amendment—Providing for the removal of the seat of government of Missouri from the City of Jefferson to the city of Sedalia—YES. First Constitutional Amendment—Providing for the removal of the seat of government of Missouri from the City of Jefferson to the city of Sedalia—NO. | |
| Second Constitutional Amendment—(To define and enlarge the jurisdiction of the courts of appeals—YES. Second Constitutional Amendment—To define and enlarge the jurisdiction of the courts of appeals)—NO. | Second Constitutional Amendment—(To define and enlarge the jurisdiction of the courts of appeals—YES. Second Constitutional Amendment—To define and enlarge the jurisdiction of the courts of appeals)—NO. | Second Constitutional Amendment—(To define and enlarge the jurisdiction of the courts of appeals—YES. Second Constitutional Amendment—(To define and enlarge the jurisdiction of the courts of appeals)—NO. | Second Constitutional Amendment—(To define and enlarge the jurisdiction of the courts of appeals—YES. Second Constitutional Amendment—(To define and enlarge the jurisdiction of the courts of appeals)—NO. | Second Constitutional Amendment—(To define and enlarge the jurisdiction of the courts of appeals—YES. Second Constitutional Amendment—(To define and enlarge the jurisdiction of the courts of appeals)—NO. | Second Constitutional Amendment—To define and enlarge the jurisdiction of the courts of appeals—YES. Second Constitutional Amendment—(To define and enlarge the jurisdiction of the courts of appeals)—NO. | Second Constitutional Amendment—(To define and enlarge the jurisdiction of the courts of appeals)—NO. | |
| Third Constitutional Amendment—To reduce school age from 6 to 5 years—YES. Third Constitutional Amendment—(To reduce school age from 6 to 5 years—NO. | Third Constitutional Amendment—To reduce school age from 6 to 5 years—YES. Third Constitutional Amendment—(To reduce school age from 6 to 5 years—NO. | Third Constitutional Amendment—To reduce school age from 6 to 5 years—YES. Third Constitutional Amendment—(To reduce school age from 6 to 5 years—NO. | Third Constitutional Amendment—To reduce school age from 6 to 5 years—NO. Third Constitutional Amendment—To reduce school age from 6 to 5 years—NO. | Third Constitutional Amendment—To reduce school age from 6 to 5 years—NO. | Third Constitutional Amendment—To reduce school age from 6 to 5 years—NO. | Third Constitutional Amendment—To reduce school age from 6 to 5 years—NO. | |
| Fourth Constitutional Amendment—(Relating to the purchase or erecting of waterworks, electric or other light plants and public sewers in cities of 30,000 inhabitants or less)—YES. Fourth Constitutional Amendment—(Relating to the purchase or erecting of waterworks, electric or other light plants and public sewers in cities of 30,000 inhabitants or less)—NO. | Fourth Constitutional Amendment—(Relating to the purchase or erecting of waterworks, electric or other light plants and public sewers in cities of 30,000 inhabitants or less)—YES. Fourth Constitutional Amendment—(Relating to the purchase or erecting of waterworks, electric or other light plants and public sewers in cities of 30,000 inhabitants or less)—NO. | Fourth Constitutional Amendment—(Relating to the purchase or erecting of waterworks, electric or other light plants and public sewers in cities of 30,000 inhabitants or less)—YES. Fourth Constitutional Amendment—(Relating to the purchase or erecting of waterworks, electric or other light plants and public sewers in cities of 30,000 inhabitants or less)—NO. | Fourth Constitutional Amendment—(Relating to the purchase or erecting of waterworks, electric or other light plants and public sewers in cities of 30,000 inhabitants or less)—YES. Fourth Constitutional Amendment—(Relating to the purchase or erecting of waterworks, electric or other light plants and public sewers in cities of 30,000 inhabitants or less)—NO. | Fourth Constitutional Amendment—(Relating to the purchase or erecting of waterworks, electric or other light plants and public sewers in cities of 30,000 inhabitants or less)—YES. Fourth Constitutional Amendment—(Relating to the purchase or erecting of waterworks, electric or other light plants and public sewers in cities of 30,000 inhabitants or less)—NO. | Fourth Constitutional Amendment—(Relating to the purchase or erecting of waterworks, electric or other light plants and public sewers in cities of 30,000 inhabitants or less)—YES. Fourth Constitutional Amendment—(Relating to the purchase or erecting of waterworks, electric or other light plants and public sewers in cities of 30,000 inhabitants or less)—NO. | Fourth Constitutional Amendment—(Relating to the purchase or erecting of waterworks, electric or other light plants and public sewers in cities of 30,000 inhabitants or less)—YES. | |
| For Representative in Congress: WILLARD D. VANDIVER. | For Representative in Congress: JOHN A. SNIDER. | For Representative in Congress: AMBROSE H. LIVINGSTON. | For Representative in Congress: | For Representative in Congress: | For Representative in Congress: | For Representative in Congress: | |
| For State Senator: ROBERT DRUM. | For State Senator: THOMAS R. GREEN. | For State Senator: | For State Senator: | For State Senator: | For State Senator: | For State Senator: | |
| For Representative: E. S. MILLER. | For Representative: JOHN J. SAWYER. | For Representative: E. SYLVESTER MILLER. | For Representative: A. K. STEVENSON. | For Representative: | For Representative: | For Representative. | |
| For Judge County Court, Second District: ROBERT W. McNEELY. | For Judge County Court, Second District: FREDERICK B. MEYER. | For Judge County Court, Second District: ROBERT W. McNEELY. | For Judge County Court, Second District: WM. S. HITT. | For Judge County Court, Second District: | For Judge County Court, Second District: | For Judge County Court, Second District: | |
| For Prosecuting Attorney: T. D. HINES. | For Prosecuting Attorney: EDWARD D. HAYS. | For Prosecuting Attorney: T. D. HINES. | For Prosecuting Attorney: | For Prosecuting Attorney: | For Prosecuting Attorney: | For Prosecuting Attorney: | |
| For Collector of the Revenue: E. L. HOPE. | For Collector of the Revenue: EDWARD W. FLETCH. | For Collector of the Revenue: E. L. HOPE. | For Collector of the Revenue: RICHARD B. BURNS. | For Collector of the Revenue: | For Collector of the Revenue: | For Collector of the Revenue: | |
| For Sheriff: JOHN H. JENKINS. | For Sheriff: BERNHARD GOCKEL. | For Sheriff: JOHN H. JENKINS. | For Sheriff: CHARLES N. CALDWELL. | For Sheriff: | For Sheriff: | For Sheriff: | For Sheriff: FRED A. KAGE. |
| For County Assessor: J. B. HOWARD. | For County Assessor: J. F. CALDWELL. | For County Assessor: J. B. HOWARD. | For County Assessor: O. SCOTT REID. | For County Assessor: | For County Assessor: | For County Assessor: | |
| For County Surveyor: N. C. FRISSELL. | For County Surveyor: JOHN E. COTNER. | For County Surveyor: N. C. FRISSELL. | For County Surveyor: WILL W. TAYLOR. | For County Surveyor: | For County Surveyor: | For County Surveyor: | |
| For County Treasurer: D. A. DRUM. | For County Treasurer: AUGUST UDE. | For County Treasurer: D. A. DRUM. | For County Treasurer: JAMES B. WALLACE. | For County Treasurer: | For County Treasurer: | For County Treasurer: | |
| For Public Administrator: ALBERT H. POE. | For Public Administrator: JULIUS E. UMBECK. | For Public Administrator: ALBERT H. POE. | For Public Administrator: ERNEST WAGNER. | For Public Administrator: | For Public Administrator: | For Public Administrator: | |
| For Coroner: S. W. MORGAN. | For Coroner: FERDINAND BRASE. | For Coroner: S. W. MORGAN. | For Coroner: D. WESLEY ANDERSON. | For Coroner: | For Coroner: | For Coroner: | |
| For Judge Court Common Pleas: F. E. BURROUGH. | For Judge Court Common Pleas: ALEXANDER ROSS. | For Judge Court Common Pleas: F. E. BURROUGH. | For Judge Court Common Pleas: LEO HOWARD. | For Judge Court Common Pleas: | For Judge Court Common Pleas: | For Judge Court Common Pleas: | |
| For Constable, Hubble Township. | For Constable, Hubble Township: PETER HANSCHEN. | For Constable, Hubble Township. | For Constable, Hubble Township: | For Constable, | For | For | |

*Fourth.* The refusal of the court to count for him the forty-eight rejected ballots.

*Fifth.* The refusal of the court to receive evidence to prove that the judges entered the booths to assist in making ballots cast for contestor.

*Sixth.* The refusal of the court to permit proof of ballots cast for contestor having been marked by the election judges without requiring from the electors an oath of disability.

I. For a proper appreciation of the first assignment it will be necessary to recite the substantial facts in full. The certificate of the county clerk made in obedience to the writ obtained by the contestee recited a recount of all the rejected ballots at the precincts named in the writ except the precincts Friedheim and Appleton. As to these he certified: Friedheim precinct, Apple Creek Township. "In this precinct I find no rejected ballots." Appleton precinct, Apple Creek Township. *"In this precinct I found one rejected ballot, No. 127, which I also rejected because the same was not a proper ballot but was a 'Cash Book' supplement."* The *Cash Book* is the title of a newspaper in said county.

On the eighth of January, 1897, contestee filed his motion for an order requiring the clerk to open and recount all the ballots in said precincts of Appleton and Friedheim. The cause assigned was that the election officers had failed to mark the rejected ballots so that they could be identified but had strung them on the wire with the ballots they had counted. The poll books showed there were more votes cast at said precincts than the sum of the votes for contestant and contestee. This motion was overruled and contestee duly saved his exceptions.

Conceding, as the appellant does, that there was no way of identifying what ballots if any were rejected

by the election officers, and the county clerk having already made two examinations and two certificates of the facts as to the condition of the contents of the ballot box, we are at a loss to see what beneficial result could have accrued to either side by another recount. We do not understand that his return to the effect that "the rejected ballots are not so marked as to be *identified*," is questioned, and even if it were, the law stamps it as *prima facie* true. Contestee having adopted this return as true, it must have seemed to the circuit court, as it certainly does to us, that another examination would necessarily disclose the same facts. The mere fact that there was a difference between the votes cast for contestor and contestee and the whole number of ballots returned to the county clerk, would not indicate to the county clerk the particular ballots not counted by the judges nor whether those not counted were for contestor or contestee.

In *Sone v. Williams*, 130 Mo. 530, it was ruled that while the circuit court might order a second recount, it was not a matter of course, and when upon the first count the fullest opportunity had been given for examination of the ballots and a second recount was sought upon mere belief and surmise only, it was properly denied. In this case the appellant had had the benefit of two counts and no good purpose could have been subserved by still another recount in the face of the admission that when made there would be no means of identification of the ballots rejected. This assignment can not be sustained.

II.   The challenges of E. W. Nelson and A. N. Payne were based upon the want of legal residence in the county. These parties testified to a residence of more than twelve months in the State and more than sixty days in the county and that they had their home in the county. It was a question of fact in which the

intention of the parties largely entered and the circuit court found they were residents within the meaning of the law and that finding we will not disturb.   *Lankford v. Gebhart,* 130 Mo. 621; *Hall v. Schoenecke,* 128 Mo. 661.

III.   The exclusion of the forty-eight ballots for contestee on which there were two groups, the Republican and the Independent, not scratched, presents the decisive question in this cause.   Section 4781, Revised Statutes 1889, was repealed by the act of April 4, 1891, and a new section bearing the same number adopted in its stead.   The new section reads:   "On receipt of his ballot the elector shall forthwith, and without leaving the polling place, retire alone to one of the places, booths or compartments provided, to prepare his ballot. He shall prepare his ballot by *crossing out* the *groups* he does *not* wish to vote, and *then make all changes on one group* by striking out the name or names of candidates he does not wish to vote for, and write the name or names of his choice underneath, so that the remaining part shall express his vote upon the questions submitted," etc.   Acts 1891, p. 133.

This new section, 4781, was again amended by an act of the General Assembly, approved April 18, 1893, so as to read as follows:   "On receipt of his ballot the elector shall forthwith, and without leaving the polling place, retire alone to one of the places, booths or compartments provided, to prepare his ballot.   He shall prepare his ballot *by crossing out the groups* he does not wish to vote, by drawing a line or lines lengthwise through a part or all of the column of names in the rejected groups—a partial erasure of a group by lines lengthwise of the column, or in any other manner than by the erasure of a name to substitute another, to be taken as a rejection of the whole group—and *then make all changes on one group* by striking out the name

or names of candidates he does not wish to vote for, and write the name or names of his choice underneath, so that the remaining part shall express his vote upon the question submitted. After preparing his ballot, the elector shall fold the same so that the face of the ballot will be concealed and the initials of the judges may be seen. He shall then vote forthwith and before leaving the polling place," etc. Acts 1893, p. 156.

This law of 1893 was in force when the general election of 1896 was held and by it the validity of ballots cast at that election must be determined. This section imperatively requires the voter to cross out every group but one and on that one he must do his voting, and make his scratches, if he desires to make any. Its provisions are stringent, plain and mandatory. Nothing but an official ballot so prepared was a lawful ballot under the act of 1893. The learned counsel for contestee relies upon section 4678 of Revised Statutes 1889 to uphold the validity of these rejected ballots. This section was first adopted March 23, 1863, and has been retained in all the general revisions down to and including that of 1889. When that section was adopted we had not adopted the Australian ballot system. There was but one group upon any ballot. It had reference to the system of balloting then in vogue, and to those cases only in which the elector by oversight or mistake inserted two names for the same office on his ticket. That section is not applicable to the amended law which provided for grouping the various candidates upon one ballot and requiring all his voting to be done under one caption and in one group.

But it is urged that granting that it is the evident purpose of the law that the voter should cross out every group save the one on which he does his voting, his neglect to do so will not render his ballot so unlawful that it must be rejected; that this provision is merely

directory and not mandatory. Many cases are to be found in which the courts have drawn a distinction between mandatory and directory statutes and provisions of statutes. Without stopping now to cite the various decisions, we think it can be safely asserted that where the provision of a statute is the very essence of the thing which it requires to be done it is imperative or mandatory.

Little assistance can be derived from the generalization of authors or courts on the subject. When the legislature has made such particular, stringent provisions as to the duty of the voter as in this section, 4178, as amended in 1893, we hold the statute is mandatory or meaningless. Three times in six years the legislative mind was directed to the subject of the preparation of the voter's ballot. With a design and purpose of securing to the voter his independence and freedom in the exercise of his political rights, protect him from fraud and intimidation, the legislature adopted and from time to time has amended this Australian ballot law. The language is imperative. It says *"He shall cross out the groups he does not wish to vote."* Directs how he shall do it. To hold such language merely directory would frustrate the essential principle of the law. Contemporaneous construction has been that the judges reject all ballots on which two groups remain unscratched, and such in our opinion is the evident meaning of the law. The force of this contention, however, is sought to be broken by the fact that the independent group contained only one name. We hold that "a group" in this section consists as well *of one name under a distinct caption*, as it would if there had been a name for each office on the ballot, and if we would reject the latter, so we must the former. By leaving two of the "groups" unscratched or unerased,

*in any manner whatever*, these voters in the contemplation of law voted two tickets as much so as if they had each deposited two distinct ballots under the system previous to the adoption of the Australian ballot. The erasures on the Republican ticket may be evidence that they intended to vote that ticket, but the total absence of any mark or scratch whatever upon the *Independent ticket* as unerringly indicates an intention to vote that ticket also, and no voter is allowed to vote *two tickets*, and when he does there is no way to determine what his intention is, and both must be rejected. There is no occasion whatever for bemoaning the supposed wrong inflicted upon "the freeman" by so doing. The "freeman" who has sense enough to scratch six "groups" or "columns" of candidates out of eight ought to be presumed to have enough to scratch the seventh when that "group" or "column," as in this case, gives warning of its presence by its caption in heavily leaded type, and if he has not he ought to seek the assistance of the judges to teach him how to scratch.

Another reason why these ballots should be rejected is that the failure to cross out all the groups but one is the act of the several voters themselves. The ballot was in the form prescribed; it was furnished by the judges and their initials were upon it. No act of the officers contributed to the violation of the statute, but the voter through inattention, ignorance, or purposely, failed to mark out one of the groups, and can complain of no one if he thereby lost his vote. He is in no position to ask protection from the ignorance or fraud of the officers. If he was illiterate the law provides that the judges should instruct him in preparing his ballot.

We hold that the forty-eight ballots, upon which the *Independent and Republican groups remained un-*

*crossed or erased*, were properly rejected by the circuit court. As already said, the statute is peremptory and the entire ballot is rendered illegal and void when the plain, positive requirements of the law are disregarded by the voter, as it was in case of these forty-eight ballots, and its illegality is not confined to the office of sheriff as contended for by contestee.

IV. The circuit court refused to hear evidence that at Burfordsville and Crump precincts the judges of election assisted in making out ballots without requiring a preliminary oath as required by section 4784, Acts of 1891, page 135, as amended April 18, 1893. Laws of Mo. 1893, page 164. That section provides: "Any elector who declares under oath to the judges of election having charge of the ballots that he can not read or write, or that by reason of physical disability he is unable to mark his ballot, may declare his choice of candidates to the judges having charge of the ballots, who, in the presence of the elector, shall prepare the ballot for voting in the manner hereinbefore provided."

It will be observed that the notice of counter contest nowhere charges that the electors named therein fraudulently accepted assistance without having previously taken the required oath nor that as a matter of fact they could read or write or were not so disabled they could not mark their ballots. We are asked to hold that the failure of the judges to require such a preliminary oath shall disfranchise the ignorant voter whose illiteracy compels him to call upon them for assistance. Though too ignorant to mark out his own ballot, he is required to instruct the judges in their duties by insisting they must first administer the oath to him. While this statute requires the judges to assist any elector who declares under oath that he can not read or write, it does not say they shall not assist

others that they know of their own knowledge can not read or write. Such cases must often occur, and while the judges should require the oath if they are doubtful of the elector's inability, still it would be a harsh construction to rule that they were guilty of conduct which should disfranchise the voter if they failed to require such oath when they well know he could neither read nor write. When it is remembered that our election judges are required to be chosen from the opposing political parties and our precincts are small, the opportunities for fraud in a voter thus assuming ignorance are so very slight that we can not believe the legislature could have intended to attach such a penalty for the simple act of aiding a voter to cast his ballot without requiring him to declare under oath what they already knew beforehand. Suppose an elector with both arms cut off, or afflicted with palsy, or blindness, presents himself, and asks to have his ballot prepared by the judges, are we to say that the judges must go through the empty form of administering the oath as to his physical disability? I think most clearly not. But in any event the mere failure of the officer to perform some prescribed duty, in the absence of any fraud or imposition practiced upon the voters, will not deprive him of his ballot *unless* the language of the statute allows no other alternative. We think the court correctly held the evidence inadmissible under the allegations of the notice in the counter contest.

V. Again it is urged that the court erred in not permitting the contestee to show that in the case of certain electors the Democratic judges went into the booths and assisted certain electors therein named. Section 4784, a part of which has already been copied, contains this proviso: "*Provided, however*, that the provisions of this section shall not be construed to allow any judge or judges of any election to enter a

booth for the purpose of assisting any elector in preparing his ballot. Such judges, after reading to the elector the contents of the ballot, shall, without leaving their respective positions, prepare such ballot as the elector may dictate." Acts 1893, p. 164.

Here again was a positive violation of the law. The judges had no right in the booths, and yet there is no allegation that this misconduct was in furtherance of a design to unduly influence these electors, or that they were in fact imposed upon, or any advantage taken of them by the judges. The judges rendered themselves amenable for a violation of the law, but the question here is, shall this unlawful action of the judge disfranchise the illiterate voter for whose protection the statute made provision? Must he suffer because those designated by the law to instruct him violate the law? To so hold would establish a precedent which unscrupulous partisan officials might seize upon to nullify a perfectly fair and honest election. It is a sound distinction of the law which disfranchises a voter for his own failure to obey the plain and positive rules adopted to secure an honest expression of the will of the people, and that which refuses to punish him for the neglect or misconduct of an officer, over whose conduct he has no control, as to some provision which the legislature has not deemed of sufficient importance to declare a non-compliance therewith shall avoid the election or render a ballot illegal and void. This objection can not, for these reasons, be sustained.

VI. There was a misnomer of Robert Buelteman in contestor's notice. The notice gave his name as *Henry* Buelteman. The circuit court unquestionably had the power to have permitted an amendment of the given name and have heard the testimony as to his non-residence. As the exclusion of this voter does not determine the contest it is not necessary to discuss the

point further. The right to amend in election con-
tests was fully considered and affirmed by this court in
*Nash v. Craig*, 134 Mo. 347.

By the official count respondent received two thou-
sand, four hundred and forty votes (2,440) and appel-
lant two thousand, four hundred and forty-nine (2,449)
votes. It was admitted that by the official count of
Steimel precinct respondent received one hundred and
four (104) votes and appellant three hundred and
eight (308) votes. According to the recount of
Steimel precinct, respondent or contestor received one
hundred and thirty-nine votes (139), and appellant
three hundred and twenty-five (325) votes, a gain of
thirty-five votes for contestor, and of seventeen votes
for contestee. The court made a finding that eight
ballots counted for contestee were cast by illegal voters,
among whom was Robert Buelteman. No exceptions
were taken to this finding save as to Robert Buelteman,
so that the total vote of contestee must be reduced by
eight on this account. It was shown that two illegal
votes were cast for contestor by McGuire and Wilson,
and these must be deducted from his total. The fol-
lowing tabular statement shows the result.

|                        | Hope.  | Flentge. |
|------------------------|--------|----------|
|                        | 2,440  | 2,449    |
| Recount............... | 35     | 17       |
|                        | 2,475  | 2,466    |
| Deducted illegal voters... | 2  | 8        |
|                        | 2,473  | 2,458    |

Majority, 15.

If to this we add the result ascertained by the
recount for appellant and consider the whole of that
return in evidence, we would have added to the above
totals the following:

|        | Hope.  | Flentge. |
|--------|--------|----------|
|        | 2,473  | 2,458    |
|        | 42     | 54       |
|        | 2,515  | 2,512    |

Majority, **3.**

As it does not change the result we have not considered whether the whole certificate is a part of the record or not. As appellant challenges and objects to it, we leave it out of consideration.

The result is, respondent was elected collector of the revenue by a majority of fifteen votes.

The judgment is affirmed.

SHERWOOD, BURGESS and BRACE, JJ., concur. BARCLAY, C. J., and MACFARLANE and ROBINSON, JJ., dissent.

BARCLAY, C. J. *(dissenting)*.—In the third section of the foregoing learned opinion, our brother GANTT holds that nearly fifty voters must lose their votes cast at the election of 1896. All these voters had prepared and voted ballots on which the entire Republican ticket remained unscratched, and on which were noted their votes upon the several constitutional amendments, in the same (the Republican) column. All the other tickets on the papers were crossed out by pencil marks, except the "Independent Ticket," on the extreme right of the ballot.

(It appears elsewhere in the case that the same ruling will probably annul a large number of Democratic ballots, marked in a similar way. Those ballots will be again referred to.)

The so-called "Independent Ticket" consisted of the name of one candidate for sheriff, printed near the bottom of the column. The column was otherwise totally blank. Yet because that "ticket" was not erased, the votes of all those who overlooked or ignored it (and who thought they had expressed their votes for other offices by proper marks on the ballot-paper) are to be totally nullified by the ruling of our learned associates. To such a judgment we enter our most respectful but emphatic dissent. It seems to us a de-

parture from valuable principles (heretofore announced in this State and elsewhere) governing the exercise of the electoral franchise.

Whenever a ruling is proposed, the effect of which is to deprive a large number of citizens of their highest privilege as freemen, any court should, before indorsing it, be very sure indeed that the ruling is sound, and that it correctly declares the true intent of the law that is supposed to point to such a result.

1.   Section 4781 (as amended by Laws of 1893, p. 156) has been already quoted. It directs the voter how to indicate the vote which he is entitled to cast. The prime object of the section is to point out how the voter may express his choice on all "the questions submitted." Its object is not to set a trap to catch him and prevent his voting. The gist of the legislation (as to the mode of marking the ballot) is found in the statement that the voter is to prepare his ballot so that the part which remains "shall express his vote upon the questions submitted." He is directed to put his vote into one column, with a view, no doubt, to facilitate the labors of the election officers in counting the votes. But the law does not say that if the voter leaves any names in other columns he is to lose his entire vote. On the contrary, he is authorized in positive terms to leave plenty of unscratched names on other columns of the paper, if he makes a "partial erasure" of those columns. The law says further that he may express his intent to reject the other "groups," "in any other manner than by the erasure of a name to substitute another." A rejection of part of a column (other than that indicating the voter's choice) "is to be taken as a rejection of the whole group."

The amendments of section 4781 in 1891 and in 1893 disclose that the legislative intent has been directed toward diminishing the risk of disfranchising

citizens on account of omissions to conform strictly to the letter of the law in marking their ballots.

As the statute now reads, the vital and paramount ideas of section 4781 are that the voter shall clearly indicate some one column as the one of his choice, and in marking his choice shall have the right to vote (in that one column) on all questions submitted.

In the case in hand, the purpose of these citizens to vote the republican ticket is perfectly clear, unless the failure to erase the Kage "group" defeats that purpose. If each of these voters had proceeded to draw a pencil mark lengthwise along some part of the blank space in the Kage "group," we presume that the supreme difficulty which has been experienced in discovering the voter's intention would disappear. But the voters did not apprehend the importance of such an act. Not being posted in the niceties of election law, nor appreciating the possibilities involved in its construction, they did not take the precaution to erase any part of the blank of which that column was chiefly composed. Hence they are now told that they must lose their votes for the important state and national offices which the blank space on the Kage "group" is supposed to represent. These voters lose their votes, not only as to the one county office named in that "group," but also as to all other offices which they had a right to take part in choosing at that election.

Just here it may be proper to inquire what was the true standing of the "*Independent ticket*" on which Mr. Kage's name appeared. In the learned opinion of our associate it is held that the name and the caption constitute a "group" (within the meaning of section 4781) the failure to erase some part of which renders the whole ballot null and void. In our opinion that "ticket" is simply what it purports to be, namely, an

official statement of an independent nomination for sheriff. It is not a column printed for use in voting for any other office than the one mentioned therein. Leaving that name 'unerased, on a ballot otherwise correct (in indicating an intent to vote another column) certainly amounts to nothing worse than a vote for two persons for the office of sheriff. It ought not to annul the vote as to other offices not referred to in the so-called ''Independent ticket.''

Under the election law in force in Missouri before the Australian ballot system was adopted, a ballot containing a vote for two persons for the same office was considered invalid only as to that office. R. S. 1889, sec. 4678. While the section just cited may, perhaps, be superseded by the new statute under which the ballots are furnished by the State and not by the voter, yet the above mentioned principle of construction of ballots is nothing more than the statement of a just general rule in the American law of elections, and is as applicable to the ''Australian law'' as it was applicable to similar language on ballots under the former law, in the absence of anything in the existing statutes to show a different purpose. *Attorney-Gen. v. Ely*, 4 Wis. 420; *Perkins v. Carraway* (1881) 59 Miss. 222.

Section 4773 [as amended by Laws of 1891, p. 134], provides how the ballots shall be printed. It makes a plain distinction between ''groups'' of nominations and the separate names required to be printed in case of independent candidacies. The officer who prepared the ballots in question in this case evidently did not consider the separate name of Mr. Kage as a full ticket. The election was to choose a great number of public officers. Every voter was entitled to vote for federal electors and congressman, as well as for state and county officers. Every voter was entitled to the privilege of having the ballots printed so that he might

exercise that right.   But the Kage ticket contains no other names whatsoever.   It does not even contain blanks for votes for any of the other offices to be filled.   It has no provisions for any vote on the proposed amendments to the organic law.   Yet the latter are required to be printed on each ballot to be voted. Laws 1895, p. 171, sec. 4753.   That section also contains a useful hint of legislative intent, touching the effect of errors in preparing ballots, by the declaration that ballots not prepared in conformity to the requirements as to constitutional amendments "shall not be counted on the proposition thereby submitted;" implying that such error shall not make the ballot invalid as to the other issues submitted at the same time.

It is manifest that the officer who made up the "Independent ticket" and caused it to be printed did not intend to multiply Mr. Kage into the dimensions of a national, state, and county "group."   Had the officer entertained such a purpose, would he not have put upon that ticket the necessary printed matter for votes on "all the questions submitted," which is the only limit of the voter's range of choice in the column (or "group") he is entitled to vote at a general election? Can the voters be justly blamed (and condemned to lose their votes for other offices) because they took the same view of the Kage ticket that the official who arranged the ballot did?   It is expressly declared by the ballot law (R. S. 1889, sec. 4765) that no person shall be "published as a candidate for more than one office."   Surely Mr. Kage was not in the political field for every office to be then filled.   On his column all the other offices were represented by blank space only. To hold that such blank space is a "group" (as to the many offices then subject to vote) seems to do violence to the very terms of section 4781 which sanctions such a marking of the official ballot actually voted

as shall show the voter's choice on all "the questions submitted."

In the Cape Girardeau cases now before the court it is not claimed by anyone that votes of the kind under discussion are valid for the office of sheriff. It is only insisted that they are good as' to the other offices in the full column duly indicated as the choice of each voter. In our opinion they are good to that extent at least.

The acknowledged spirit of the American law, before the acceptance of the Australian system, required effect to be given to the intention of the voter as depicted on his ballot, even though the expression of that intent might be in some degree irregular, unless the irregularity violated some fundamental principle of the secret ballot or was expressly declared by law to be fatal to the vote. *Gumm v. Hubbard* (1889) 97 Mo. 311 (11 S. W. Rep. 61); *Brown v. McCollum* (1889) 76 Iowa, 479 (41 N. W. Rep. 197).

The new law gives no, sign of any purpose to change that just and fair rule for dealing with the very serious topic of popular elections. On the contrary, the leading decisions construing that law in other jurisdictions indicate that its true spirit and purpose are best expressed by adhering to that rule. Hence it has been held that the intent exhibited by irregular marking of the ballot will be respected, provided it does not infringe on the prohibition against distinguishing marks, and is not distinctly forbidden. Both the foreign and American courts have sanctioned many irregular markings, in obedience to the well recognized doctrine that the paramount object of such a law is to get at and effecuate the intention of the voter. *Reg v. Bagley* (1870) Mac. (N. Z.) 836; *Phillips v. Goff* (1886) 17 Q. B. D. 805; *Miller v. Pennoyer* (1893) 23 Ore. 364 (31 Pac. Rep. 830); *Coleman v. Gernet* (1893) 3

Pa. Dist. 500; *Johnson v. Board of Casnovia* (1894) 101 Mich. 187 (59 N. W. Rep. 412); *Boyd v. Mills* (1894) 53 Kan. 594 (37 Pac. Rep. 16); *Parker v. Orr* (1895) 158 Ill. 609 (30 L. R. A. 227; 41 N. E. Rep. 1002); *Page v. Kuykendall* (1896) 161 Ill. 319 (32 L. R. A. 656, 43 N. E. Rep. 1114).

In the very case at bar the learned opinion of the majority of the court declares (in the fifth paragraph) that the fact that judges of election entered the booths and assisted electors to prepare their ballots can not be shown with a view to invalidate any part of the vote cast. Yet such action by the election judges is expressly forbidden by section 4784 as amended by the laws of 1893, p. 164. And in the fourth paragraph of the same learned opinion the omission of the oath required of voters is held to have no prejudicial bearing on the result, although such oath is positively commanded by the terms of the section last above cited.

We believe the same general principle of aiming at the substance instead of mere form, in dealing with elections, should also be so applied as to preserve the rights of those citizens whose eyes were not keen enough to notice that there was something in the deep blank of the Kage ticket that demanded their attention, under penalty of disfranchisement.

2. We would further respectfully insist that the view above given of this case is but an application of the principle announced by a majority of the court *in banc* in the twelfth paragraph of the opinion in *Langford v. Gebhardt* (1895) 130 Mo. 621 (32 S. W. Rep. 1127). We think that principle is correct and that it should not be discarded.

3. It is claimed by respondent that even if the republican ballots (whose effect we have discussed) are counted, the respondent would still be elected, because he received some forty odd democratic ballots,

which were rejected in the final figures, on account of a like failure of the voters to cross out the Kage ticket. The difficulty with that contention is that the ballots needed to produce the result claimed are not before this court. They are not called for by the bill of exceptions, nor are they referred to therein in a way to disclose the facts relied upon by respondent. So we can not consider them, unless the return of the county clerk to the order for a recount of the ballots may be looked at as part of the record proper in the cause, which respondent thinks is permissible. The county clerk's return is mentioned as being before the circuit court at the trial, but its terms are not recited (nor is enough of its purport given) in the bill of exceptions to show how many democratic votes were rejected on a similar ground to that which caused the rejection of the republican votes already mentioned.

The return to an order for a recount is not of itself a part of the record proper. It is evidence for certain purposes (R. S. 1889, sec. 4726) but can be made available on appeal only by taking the appropriate steps to bring it into the record. We can not tell (with the certainty necessary to a final count) how many democratic ballots (on which the Kage ticket was not scratched) were rejected at the trial. And hence the record does not show that the error of rejecting the republican ballots was harmless.

We believe that the circuit judgment should be reversed and the cause remanded for a new trial, and therefore dissent from the judgment announced by the majority of the court *in banc*. MACFARLANE and ROBINSON, JJ., join in this opinion.