MONTANA MILK CONTROL BOARD, PLAINTIFF AND APPELLANT v. COMMUNITY CREAMERY COMPANY, A CORPORATION, MEDO-LAND DAIRY COMPANY, A CORPORATION, AND E. W. GRAYBEAL, DOING BUSINESS AS MISSOULA CREAMERY AND COLD STORAGE COMPANY, DEFENDANTS AND RESPONDENTS.

No. 10227.
Submitted September 19, 1961. Decided November 14, 1961.
366 P.2d 151.

Geoffrey L. Brazier (argued orally), Helena, for appellant.

Smith, Boone & Rimel, Russell Smith (argued orally), Ed. C. Mulroney (argued orally), Mulroney & Mulroney, Missoula, for respondents.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

Appeal from a judgment entered pursuant to an order of the district court of Missoula County sustaining a demurrer to the plaintiff's amended complaint.

The Montana Milk Control Board, plaintiff in the district court and appellant here, filed a complaint against the following named defendants, respondents here, being the Community Creamery Co., a corporation, Medo-Land Dairy Co., a corporation, and E. W. Graybeal, doing business as the Missoula Creamery and Cold Storage Co. The Board in its amended complaint alleged the following violations of the Montana Milk Control Act:

The defendants, Community Creamery Co. and the Medo-Land Dairy Co., were charged with selling fluid milk in the Missoula marketing area in half-pint quantities to public and private schools at prices less than those designated by the Milk Control Board in official order No. 184, issued January 11, 1957, effective February 11, 1957. The defendants were allegedly selling milk for a price of $5\frac{1}{2}$ cents per half-pint, whereas the official order of the Board had established 7 cents as the price per half-pint.

The defendant, E. W. Graybeal, was charged with two violations. The first being that Graybeal sold dispenser milk to schools in the Missoula marketing area at a price of 65 cents per gallon.

The second being that he was charged with doing business contrary to the provisions of section 27-414, subds. (b) and (c), R.C.M.1947, and the official order of the Board, No. 59-1, effective July 1, 1959. This allegation was that Graybeal had furnished milk dispensers to fraternities free of charge, thus

violating the fair-trade practices established by statute and the order of the Board.

The plaintiff alleged that the violations by the defendants of the statutes and official orders of the Board would result in a general demoralization of the fluid milk industry causing irreparable harm to plaintiff, the milk producers, and the consuming public.

Plaintiff prayed that the defendants be perpetually restrained from selling fluid milk at prices less than those fixed by the Milk Control Board and from violating fair-trade practices.

Each of the defendants interposed a general and special demurrer to the plaintiff's amended complaint. The general demurrers alleged that the amended complaint failed to state facts sufficient to constitute a cause of action.

The district judge sustained the general demurrers, reasoning that a court of equity will not enjoin the commission of a criminal act.

This court is not bound by the reasons given by a district court in sustaining a demurrer. The judgment will be affirmed on appeal if this court concludes that a demurrer should have been sustained upon other grounds. Porter v. Plymouth Gold Mining Co., 29 Mont. 347, 74 P. 938.

Therefore, the issue involved is whether the Board's amended complaint stated facts sufficient to constitute a cause of action.

The Board's official order No. 184, setting the prices for dairy products in the Missoula marketing area was promulgated under section 27-407, R.C.M.1947, which prior to the 1959 amendment stated in part:

"The board after making such investigation shall fix by official order: * * *

"(b) The minimum wholesale or retail prices to be charged for milk in its various grades and uses handled within the state for fluid consumption and wheresoever produced when sold by milk dealers whether licensed or unlicensed, to con-

sumer; by stores to consumers except for consumption on the premises where sold; by milk dealers to other milk dealers."

If the official order of the Milk Control Board establishing the price for milk is to include sales of milk to schools, a school must be a consumer within the meaning of the statute quoted above.

In interpreting a statute, the problem is to ascertain the intention of the legislature. Various rules of construction are used by courts to establish legislative intention. One of the rules of construction is a presumption that the legislature, in adopting an amendment to a statute, intended to make some change in the existing law. Pilgeram v. Haas, 118 Mont. 431, 167 P.2d 339; Mitchell v. Banking Corporation, 95 Mont. 23, 24 P.2d 124.

In 1959, section 27-407, supra, was amended to read in part as follows: "The board, after consideration of the evidence produced at such hearing, shall make written findings and conclusions and shall fix by official order: * * *

"(b) The minimum wholesale prices to be charged for milk in its various forms, classes, grades, and uses when sold by distributors or producer-distributors to retail stores, restaurants, boarding houses, fraternities, sororities, confectioneries, public and private schools, including colleges and universities, and both publiic and private institutions and instrumentalities of all types and descriptions."

The 1959 amendment to section 27-407, supra, expressly included schools, both public and private. The presumption that the legislature did not intend a useless act and intended to make some change in the existing law by including schools within the act by the 1959 amendment leads to the conclusion that schools were not considered as consumers by the legislature under the act existing in 1957 when the Board's order was issued.

Therefore, as schools were not consumers under the act existing in 1957 and as the Milk Control Board's official

order No. 184 setting the price for milk was promulgated in 1957 and not under the 1959 amendment, the complaint failed to state a cause of action. The Board had no authority under the law as it existed in 1957 to regulate the price of milk sold to schools.

The Milk Control Board in their amended complaint also alleged a violation of fair-trade practices. The defendant Graybeal was charged with doing business contrary to section 27-414, subds. (b) and (c), supra, and the official order of the Milk Control Board No. 59-1.

Section 27-414, R.C.M.1947, the statutory authority under which the Board enacted its rules and regulations governing fair-trade practices states:

"In addition to the general and special powers heretofore set forth, the board shall have the power to make and formulate reasonable rules and regulations governing fair-trade practices as they pertain to the transaction of business among licensees under this act and among licensees and the general public. Such reasonable rules and regulations governing fair-trade practices shall contain, but shall not be limited to, provisions regarding the following methods of doing business which are hereby declared unfair, unlawful, and not in the public interest:

"(a) The payment, allowance, or acceptance of secret rebates, secret refunds, or unearned discounts by any person, whether in the form of money or otherwise.

"(b) The giving of any milk, cream, dairy products, services, or articles of any kind, except to bona fide charities, for the purpose of securing or retaining the fluid milk or fluid cream business of any customer.

"(c) The extension to certain customers of special prices or services not available to all customers who purchase milk of like quantity under like terms and conditions.

"(d) The purchasing, processing, bottling, packaging, transporting, delivering or otherwise handling in any marketing

area of any milk which is to be or is sold or otherwise disposed of at less than the minimum wholesale and minimum retail prices established by the board pursuant to this act.

"(e) The payment of a less price than the applicable producer price established by the board pursuant to this act by a distributor to any producer for milk which is distributed to any person, including agencies of the federal, state or local government."

From a reading of this statute, it is apparent that there can be no violation of the statute itself. The subsections are merely mandatory provisions to guide the Milk Control Board in promulgating their rules and regulations. A violation of fair trade occurs when a party violates properly promulgated rules and regulations of the Board, enacted pursuant to this statute. The statute was not intended to stand independently, but rather as a mandatory guide for the Milk Control Board in preparing their rules and regulations.

Therefore, if there has been a violation of the fair-trade practices, such violation must appear from the rules and regulations of the Board. The official order No. 59-1 of the Board governing fair-trade practices reads as follows:

"Pursuant to the provisions of Section 8, Chapter 192, Session Laws of 1959, and by virtue of authority granted to the Montana Milk Control Board under Section 8, Chapter 192, Session Laws of 1959, said board did in convened session on May 29, 1959, promulgate the following Rules of Fair Trade. The Following Conduct by Licensees Shall Be Considered Unfair Trade Practice:

"Rule 1(a). The solicitation by the licensee or causing of such solicitation by others for the purpose of securing business through the medium of contests or other devises [sic] by which prizes or premiums are awarded; except that nothing in this rule shall be construed to prohibit sales contests or promotions for cash or merchandise prizes among the regularly employed sales or delivery personnel of a licensee.

"Rule 1(b). The placing or allowing to be placed, an extraordinary value on any seal, box top, cap, container or part thereof not generally accepted or considered in the course of the marketing of dairy products.

"Rule 2. The giving, loaning, or furnishing under any circumstances, ice coolers, display cases, storage cabinets, milk boxes, or other devises [sic] which are used in the display, sale or storage and/or refrigeration of milk except that the above may be sold for a monetary consideration of not less than cost. For the purpose of this rule the cost shall be considered to be the asset purchase price plus freight in and installation charges.

"Rule 3. The leasing, renting, or allowing to be used, by a licensee, of any coolers, display cases, storage cabinets, milk boxes, or other devises which are used in the display, sale or storage and/or refrigeration of milk without receiving a reasonable rate of return for rental. Each such rental agreement shall contain a provision that the lessee is not obligated by virtue of said rental agreement to purchase any dairy products from the distributor.

"Rule 4. The advertising through public communication media the intent to violate milk control statutes, rules and orders.

"All previous and existing Rules of Fair Practice be and are hereby rescinded whether in conflict or not with Rules 1(a), 1(b), 2, 3, and 4, of this order."

It is noteworthy that section 27-414, supra, requires that the rules and regulations of the Board *shall contain* certain methods of doing business which are declared unfair. This statute requires the Board, when promulgating rules and regulations governing unfair-trade practices, to encompass the five unfair methods of doing business set out by the legislature in section 27-414, supra.

It is evident that the Board in adopting its rules and regulations did not include all five of the unfair methods of doing

business which the legislature stated shall be contained in their rules and regulations.

As an example, the legislature stated in section 27-414, supra, that the Board shall provide that the giving of secret rebates, secret refunds, or unearned discounts shall be unlawful. The nearest the Board comes to providing for such conduct in their rules and regulations is the outlawing of solicitation. Surely, we cannot be expected to hold that the words "rebate", "refund" or "discount", and solicitation are synonymous.

The only conclusion which can be arrived at is that the rules and regulations adopted by the Board were not in accordance with their delegated authority. By failing to follow the mandate stated by the legislature, the Board acted without authority.

It is a fundamental principal of law that for a rule or regulation adopted by a public administrative body to be valid it must be within the authority delegated to such body or officer. 73 C.J.S. Public Administrative Bodies and Procedure § 103, p. 420.

We have no alternative but to hold that because the Montana Milk Control Board has failed to encompass the provisions which the legislature expressly stated shall be contained in their regulations governing unfair-trade practices, the regulations promulgated by the Board governing unfair-trade practices are invalid.

Therefore, because the Montana Milk Control Board failed to state a cause of action in its amended complaint against any of the named defendants, the judgment of the district court is affirmed.

MR. JUSTICES ADAIR, CASTLES and JOHN C. HARRISON concur.

MR. JUSTICE DOYLE deemed himself disqualified.