MRS. VIVIAN A. McCARTHY, Claimant and Respondent, v. MONTANA POWER COMPANY, UNEMPLOYMENT COMPENSATION COMMISSION of Montana, and EDGAR H. REEDER, JAMES J. FLAHERTY, and HOWARD N. HEBERT, Commissioners and Members, Defendants and Appellants.

No. 10619

Submitted November 7, 1963. Decided December 19, 1963.

387 P.2d 438.

Edward C. Schroeter (argued), Helena, for appellants.
John J. McCarthy (argued), Butte, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal by the Unemployment Compensation Commission from a judgment of the district court of the second judicial district of the State of Montana, in and for the County of Silver Bow, the Honorable Sid G. Stewart presiding.

The facts of this case are undisputed. The respondent, a twenty-year old female was employed by the Montana Power Company as an I. B. M. key punch operator for some twenty months prior to June 8, 1962. Her husband was a student at the Montana School of Mines with one year of study left before graduation. In the summer of 1962, he was offered the opportunity of working in California by a company who was interested in employing him after graduation, and he took the job for the three summer months. The respondent was pregnant at the time and desired to accompany her husband to California for the three months. She requested that her employer give her a three months leave of absence which was refused, so on June 8, 1962, she voluntarily terminated her position stating that she was quitting her job to go to California with her husband. She remained in California until August 30, 1962, when she returned with her husband to Butte so that he could complete his final year at the School of Mines. While

in California the couple continued to pay rent on their residence in Butte. Respondent filed on September 20, 1962, for initial claim to benefits under Unemployment Compensation Commission Act making claim for benefits effective from September 16, 1962, which was disallowed on September 25, 1962. A child was born to the respondent on September 23, 1962, and between that date and October 31, 1962, the date of the hearing before an Unemployment Compensation Commission examiner, nothing further was done by her to secure employment nor were any other claims made to the Unemployment Compensation Commission. The appeal from the deputy's decision denying benefits was heard on October 31, 1962, and on November 30, 1962, the decision of the deputy was upheld. On February 22, 1963, an appeal was taken to the district court which overruled the decision of the Unemployment Compensation Commissioner examiner, and on May 22, 1963, the district court held that respondent was entitled to receive Unemployment Compensation Commission payments.

The sole question that we see in this case is whether respondent is entitled to benefits under the Montana Unemployment Compensation Act.

R.C.M.1947, § 87-102, sets forth the declaration of policy. R.C.M.1947, § 87-106, subd. (j), as amended, is the particular section called upon for interpretation.

R.C.M.1947, § 87-102, provides:

*"Declaration of state public policy.* As a guide to the interpretation and application of this act, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. *Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family.* The achievement of social security requires protection against this greatest

hazard of our economic life. This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The legislature, therefore, declares that in its considered *judgment the public good, and the general welfare of the citizens of this state require the enactment of this measure under the police powers of the state for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own."* Emphasis supplied.

R.C.M.1947, § 87-106, subd. (a), as amended, provides:

"An individual shall be disqualified for benefits—

"(a) If he has left work without good cause attributable to the employment for a period of not less than two (2) or more than five (5) weeks (in addition to and immediately following the waiting period), as determined by the commission according to the circumstances in each case. No benefit payments or amount paid any individual after having left work without good cause attributable to the employment shall ever be charged under section 87-109 against any employer (whose employment the individual left) on account of that particular employment."

R.C.M.1947, § 87-106, subd. (j), as amended, provides:

"An individual shall be *disqualified for benefits*—

"(j) *For any week wherein claimant leaves her most recent work to change her place of residence in order to remain with her husband or relative.* Such disqualification shall *cancel all existing wage credits and shall continue until such time as subsequently to such week additional wage credits shall have been earned so as to be eligible for benefits under section 87-105."* Emphasis supplied.

In construing sections 87-102 through 87-106, R.C.M. 1947, our fundamental purpose and object is to ascertain, if

possible, and to give effect to the intention of the Legislature. Fulton (Board of Equalization) v. Farmers Union Grain Terminal Assn., 140 Mont. 523, 374 P.2d 231; Montana Milk Control Bd. v. Community Creamery Co., 139 Mont. 523, 366 P.2d 151.

Two factors are necessary if the ruling of the district court is sustained. First under section 87-106, supra, we must find respondent left with good cause, and second that she had residence within the meaning of the statute in Montana for the three summer months she lived with her husband in California. If she fails to establish both, the case must be reversed.

In determining whether "she left work without good cause attributable to the employment," we first look to the public policy declaration of our statute.

"* * * Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burdent which now so often falls with crushing force upon the unemployed worker and his family." (R.C.M.1947, § 87-102) The controlling words in this section are "involuntary unemployment."

This preamble undeniably indicates a legislative intent that the Act is not for the purpose of providing benefits for one who ceases employment for purely personal reasons, but is intended only for those who are involuntarily unemployed. When read with the specific sections that follow, the preamble is controlling.

The record leaves no question that the respondent "voluntarily terminated her employment" due to her desire to go with her husband to California. Certainly the cause of her leaving was good cause to her, but it is clearly not a cause connected with her employment, nor can it be considered "involuntary unemployment." See Wolfe v. Iowa Unemployment Compensation Comm., 232 Iowa 1254, 7 N.W.2d 799; Ex Parte Alabama Textile Products Corp., 242 Ala. 609, 7 So.2d 303, 310,

141 A.L.R. 87; Huiet, Commissioner v. Schwob Mfg. Co., 196 Ga. 855, 27 S.E.2d 743; Illinois Bell Tel. Co. v. Board of Review of Dept. of Labor, 413 Ill. 37, 107 N.E.2d 832.

As previously pointed out, the appeal must fail unless the respondent prevails on both good cause (section 87-106, subd. (a)) and the residence provision in section 87-106, subd. (j), supra. Having found she did not have good cause, within the meaning of the statute, the cause must be reversed, and the order of the appeals examiner of the Unemployment Compensation Commission sustained.

Realizing that we are called upon for the first time to interpret section 87-106, subd. (j), supra, and being aware of its import to the administrative functions of a state agency we will consider the second question presented.

In 1961, the Legislature made an extensive revision of the Unemployment Compensation Commission Act and added as a new subsection, subd. (j). We must give, in construing this statute, such construction to the words used as will give effect to the purpose intended by the Legislature. Here the word "residence" must be read in context with the words of the statute. When so read, clearly the facts of respondent's case fall within the statute and she is precluded from receiving benefits.

The trial court and respondent rely upon section 83-303, R.C.M.1947, and two cases of this court to support their position that the Butte residence was respondent's residence during the summer of 1962. See Kunesh v. City of Great Falls, 132 Mont. 285, 317 P.2d 297; McFadden v. Dudley, 128 Mont. 230, 272 P.2d 1003. This court in the Kunesh case, supra, 132 Mont. at page 289, 317 P.2d at page 299, had this to say about residence:

"Residence has been defined as the place where a man makes his home. The rules for determining residence are given in R.C.M.1947, § 83-303, which states that there can be only one residence, that it cannot be lost until another is gained,

that it can be changed only by union of act and intent, that, presumptively, the residence of the husband, is the residence of the wife, and that residence "* * * is the place where one remains when not called elsewhere for labor or other special or temporary purpose, and to which he [the resident] returns in seasons of repose.' However, *these are guides for interpretation, they are not a definition.* This is unavoidable, for as Mr. Justice Holloway observed in Carwile v. Jones, 38 Mont. 590, at page 602, 101 P. 153, at page 158, 'it is as easy to understand the meaning of "residence" as it is to understand the meaning of some of the terms used in the rules for determining the meaning of "residence." *Every case must stand upon its own facts, and a decision in any event must, of necessity, be the result of a more or less arbitrary application of the rules of law to the facts presented.'* " (Emphasis supplied.)

In the McFadden case, supra, in a case involving the probate of an estate, this court held for the purposes of the action that residence and domicile were the same insofar as the administration of an estate, but as in the Kunesh case found that each case must stand on its facts.

This court said in the Kunesh case, supra, 132 Mont. at page 289, 317 P.2d at page 299, concerning the provisions of section 83-303, R.C.M.1947: "However, these are guides for interpretation, *they are not a definition.*" (Emphasis supplied.)

We therefore find that under the sections of the Unemployment Compensation Commission Act, hereinbefore referred to, that the respondent is not entitled to compensation, and that the decision of the district court is reversed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES CASTLES and DOYLE concur.