*8 JUSTICE TRIEWEILER
dissenting.
I dissent from the majority opinion.
The majority opinion has misconstrued the vagueness doctrine, misapplied federal case law, and in the process, done severe damage to the Due Process Clauses of the Montana and Federal Constitutions.
The Monroes were charged with violating § 87-2-205, MCA, by providing a false statement in their application for wildlife conservation licenses. The false statement they are accused of making was that they were residents of Montana.
Section 87-2-102(2), MCA (1989), provided that residency for purposes of determining entitlement to a resident hunting license was determined under § 1-1-215, MCA. The relevant part of that statute provides:
Every person has, in law, a residence. In determining the place of residence the following rules are to be observed:
(1) It is the place where one remains when not called elsewhere for labor or other special or temporary purpose and to which he returns in seasons of repose.
What does that mean? Does it mean that if you live and work in Texas for 11 months out of the year, but return to Montana for one month during your annual vacation you are a Montana resident? The statute obviously does not provide any objective criteria which would put people with connections to Montana and some other state on notice of whether they satisfied the residency requirement found in the Fish and Game laws.
We have previously held that a statute can violate the Fourteenth Amendment of the United States Constitution, and Article II, Section 7, of the Montana Constitution, if it is unconstitutionally vague. State v. Woods (1986), 221 Mont. 17, 22, 716 P.2d 624, 627.
The issue of “vagueness” with regard to a statute or ordinance can be raised in two different connotations: (1) whether it is so vague the law is rendered void on its face; or (2) if it is vague as applied in a particular circumstance.
The general rule is that a statute or ordinance is void on its face if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute. United States v. Harriss (1954), 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989.
City of Choteau v. Joslyn (1984), 208 Mont. 499, 505, 678 P.2d 665, 668.
The United States Supreme Court elaborated on the rule set forth in United States v. Harriss in its decision in the case of Bouie v. City *9 of Columbia (1964), 378 U.S. 347, 84 S. Ct. 1697, 12 L. Ed. 2d 894. In that case, the U.S. Supreme Court gave the following explanation of the vagueness doctrine, as it pertains to the Due Process Clause of the United States Constitution:
The basic principle that a criminal statute must give fair warning of the conduct that it makes a crime has often been recognized by this Court. As was said in United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989,
“The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.”
Thus we have struck down a state criminal statute under the Due Process Clause where it was not “sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties.” Connally v. General Const. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 706 L.Ed. 322. We have recognized in such cases that “a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law,” ibid., and that “No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids.” Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888.
Bouie, 378 U.S. at 350-51, 84 S.Ct. at 1700-01 (footnote omitted).
If it is not sufficiently apparent from the murky language of the residency statute itself that people of reasonable intelligence would be unable to ascertain who is or is not a resident of Montana under its terms, that conclusion necessarily follows from our prior decisions. In fact, in McCarthy v. Montana Power Company (1963), 143 Mont. 134, 387 P.2d 438, we concluded that the statute relied on by the State of Montana to establish residency in this case was not a definition at all. Referring to the same statute, we held:
“However, these are guides for interpretation, they are not a definition. This is unavoidable, for as Mr. Justice Holloway observed in Carwile v. Jones, 38 Mont. 590, at page 602, 101 P. 153, at page 158, ‘it is as easy to -understand the meaning of “residence” as it is *10 to understand the meaning of some of the terms used in the rules for determining the meaning of “residence.” Every case must stand upon its own facts, and a decision in any event must, of necessity, be the result of a more or less arbitrary application of the rules of law to the facts presented’.”
McCarthy, 387 P.2d at 441-42 (quoting Kunesh v. City of Great Falls (1957), 132 Mont. 285, 289-90, 317 P.2d 297, 299).
If § 1-1-215, MCA, does not provide a definition of residence, and if § 87-2-102(2), MCA, did not, in 1989, have a definition of residence other than by reference to § 1-1-215, MCA, then what notice did the Monroes have that when they filled out this application for a resident hunting license they were violating the law?
Arbitrary, after-the-fact applications of the criminal law are exactly what the Due Process Clause, through the vagueness doctrine is designed, in fairness, to avoid. In defining the values that are offended by vague criminal statutes, the United States Supreme Court has stated as follows:
Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant danger of arbitrary and discriminatory application. [Emphasis added].
Grayned v. City of Rockford (1972), 408 U.S. 104, 108-09, 92 S. Ct. 2294, 2298-99, 33 L. Ed. 2d 222, 227-28 (footnotes omitted).
According to our own prior decisions, the residency statute in this case requires the sort of ad hoc, arbitrary, judicial application that the Due Process Clause clearly prohibits according to the decisions of the United States Supreme Court. That observation should resolve the issue raised by the Monroes on appeal to this Court.
However, the majority has inexplicably added a new element to the vagueness doctrine. The majority concludes that if anyone would understand they are not a resident under this statute, then it cannot be unconstitutionally vague. In other words, the majority has eliminated the former requirement that a statute give “a person of ordi *11 nary intelligence fair notice that his contemplated conduct is forbidden by statute,” and instead, substituted the requirement that if one out of 100 people would understand that his or her conduct is prohibited, it makes no difference that the other 99 people of average intelligence do not have the foggiest notion about what the statute prohibits. In support of this unprecedented conclusion, the majority cites Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc. (1982), 455 U.S. 489, 102 S. Ct. 1186, 71 L. Ed. 2d 362. However, in doing so, the majority has taken language from Hoffman out of context and misapplied its holding.
In Hoffman, the defendant was charged with violating an ordinance which required that he obtain a license if he sold any items that were “ ‘designed or marketed for use with illegal cannabis or drugs....’” Hoffman, 455 U.S. at 492. In his business, he sold a variety of merchandise, including “phonographic records, smoking accessories, novelty devices, and jewelry ....” Hoffman, 455 U.S. at 491, 102 S.Ct. at 1189. The Circuit Court of Appeals concluded that the statute was unconstitutionally vague on its face because of its application to certain items sold by defendant, such as ordinary pipes or paper clips. The Supreme Court discussed the requirement that the statute be impermissibly vague in all of its applications in the context of whether a plaintiff could challenge the constitutionality of the statute if at least some of his conduct was clearly proscribed by the statute. It concluded that he could not. The Supreme Court said nothing about a requirement that the statute be vague with regard to every conceivable person to whom it could be applied. In explaining its holding, the Court stated as follows:
The ordinance requires Flipside to obtain a license if it sells “any items, effect, paraphernalia, accessory or thing which is designed or marketed for use with illegal cannabis or drugs, as defined by the Illinois Revised Statutes.” Flipside expresses no uncertainty about which drugs this description encompasses; as the District Court noted, [The Flipside, Hoffman Estates v. Village of Hoffman Estates,] 485 F.Supp. [400], at 406 [(N.D.Ill. 1980)] Illinois law clearly defines cannabis and numerous other controlled drugs, including cocaine. Ill. Rev. Stat., ch. 56V2, ¶¶703 and 1102(g) (1980). On the other hand, the words “items, effect, paraphernalia, accessory or thing” do not identify the type of merchandise that the village desires to regulate. Flipside’s challenge thus appropriately focuses on the language “designed or marketed for use.” Under either the “designed for use” or “marketed for use” standard, *12 we conclude that at least some of the items sold by Flipside are covered. Thus, Flipside’s facial challenge is unavailing.
Hoffman, 455 U.S. at 500, 102 S.Ct. at 1194 (footnote omitted).
It is clear from the quoted passage, that when discussing “all of its applications” the Supreme Court was referring to all of the statutes applications to that defendant’s conduct.
The residency requirement -under which the Monroes are being prosecuted was so vague that many county attorneys have refused to prosecute based on the criteria that it establishes, and the former head of the Department of Fish, Wildlife, and Parks asked that it be amended to provide some workable guidelines in the future. In his testimony before the Legislature in support of the proposed amendment to § 87-2-102(2), MCA, which became effective on July 1, 1991, K. L. Cool testified as follows:
Senate Bill 298 consolidates and clarifies the elements necessary to determine legal residency for purposes of obtaining hunting, fishing and trapping licenses. The residency requirements, as presently written, are not specific enough to effectively support criminal prosecutions and, in fact, are sometimes confusing to sportsmen because the requirements are vague. County attorneys prosecuting residency cases in courts have frequently found the current residency statutes unworkable. Some county attorneys have told us they will no longer prosecute residency cases until Montana has a workable law. This bill will not change who qualifies as a resident, but will make specific and clarify the standards for determining residency.
Simply stated, the current statute defines a resident as a person who has moved to Montana and intends to make his or her home here. The only specific requirement is that a person must be a resident 6 months prior to. being eligible to purchase a resident hunting, fishing or trapping license. With this vague and general definition, it is understandable that county attorneys have difficulty prosecuting an individual who owns property and lives part of the year in Montana, but earns his living and pays state income taxes in another state.
Mr. Cool’s testimony, in combination -with our previous decisions, including McCarthy, are perfect illustrations of the kind of arbitrary applications that resulted from the vague language used to define a resident in Montana’s hunting, trapping, and fishing license laws. Because of uncertainty about the meaning of the statute, prosecu *13 tions under the statute are arbitrary and have historically depended on the county where a violation is suspected. Even if charges are brought, successful prosecution depends on an arbitrary case-by-case application of the statute in the judicial system. Since this is the kind of unpredictability and unfairness that the vagueness doctrine is intended to prohibit, I would conclude that the statute pursuant to which the Monroes have been prosecuted was unconstitutionally vague in violation of the due process clauses in the Montana and Federal Constitutions and would reverse the judgment of the District Court.
For these reasons, I dissent from the majority opinion.
JUSTICES HUNT and NELSON join in the foregoing dissenting opinion.